**FILED**

JAN 2 4 2012

[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

**************************************************************************

| | | |
|---|---|---|
| AVERA ST. LUKE'S HOSPITAL, | * | |
| | * | 1:11-CV-01020 |
| Plaintiff, | * | |
| | * | ORDER AND |
| -vs- | * | OPINION |
| | * | |
| ADIL M. KARAMALI, M.D., | * | |
| | * | |
| Defendant. | * | |
| | * | |

**************************************************************************

Avera St. Luke's Hospital ("Avera") filed a complaint with South Dakota's Fifth Judicial Circuit on July 15, 2011, seeking indemnity or contribution from Adil M. Karamali, M.D. ("Karamali") on a theory of implied indemnity based on its allegation that the defendant committed negligent acts or omissions that were the cause of damages incurred by the plaintiff in a prior case, Larry Alexander, M.D. v. Avera St. Luke's and Sanford USD Medical Center, Civ. 09-5294 (2d Cir. Ct. S.D.), settled by Avera's monetary payment–of which Karamali did not contribute.

Defendant served as a *locum tenens* cardiologist for Avera between March 28 and April 1, 2008, during which time the incident involving Dr. Alexander occurred. Karamali filed a notice of removal with this court, citing diversity jurisdiction under 28 U.S.C. § 1332. Both Avera and Karamali sought and were granted a protective order on the contents of the Alexander lawsuit settlement. Karamali also filed an answer to plaintiff's complaint.

Karamali filed a motion for summary judgment with an accompanying memorandum and a statement of material facts pursuant to D.S.D. Civ. LR 56.1A. Avera filed four documents—a response to Karamali's statement of material facts, a statement of disputed material facts, a memorandum opposing the motion, and an affidavit. Karamali filed a brief in reply.

**I.        BACKGROUND**

**A.    Standard of Review**

Fed. R. Civ. P. 56 requires that this court dismiss all claims for which the movant shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law. The movant must support its motion with evidence admissible at trial in order to meet its initial burden showing the absence of a genuine issue of material fact. If the moving party meets its initial burden, the nonmoving party cannot merely rest upon allegations or denials in its pleadings to defeat the motion, Forrest v. Kraft Foods, Inc., 282 F.3d 688, 691 (8th Cir. 2002), but must "substantiate his allegations with enough probative evidence to support a finding in his favor" by citing to particular materials in the record which support the assertion that a fact is genuinely disputed, Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008).

The court must view the admissible evidence in a light favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from the evidence. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). However, the scope of admissible evidence is quite finite: "Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## B.     Factual Background

The relevant facts in connection with the motion are mostly undisputed. Avera was named as a co-defendant, along with Sanford USD Medical Center, in a prior state court action. The prior plaintiff, Dr. Alexander, claimed that Avera was negligent and exacerbated damage to Dr. Alexander's heart, resulting in pain, suffering, permanent disability, and his need for a heart transplant. Karamali was not named in Dr. Alexander's complaint. Instead, his name first arose in the disclosures of Dr. Alexander's medical expert, who singled out Karamali in his analysis of Dr. Alexander's medical records on the date of the treatment of his myocardial infarction, April 1, 2008—the same date when the alleged negligence occurred. Karamali admits he was still serving as *locum tenens* cardiologist for the plaintiff on that date.

No claim was brought against defendant by Dr. Alexander within the two year statute of limitations for medical malpractice, SDCL 15-2-14.1, and any claims by Dr. Alexander against Karamali are now barred. Avera settled this prior lawsuit by paying Dr. Alexander. Karamali

2

disputes (1) Avera's mixed factual and legal contention that Karamali's alleged negligence is legally imputed to Avera and (2) that Avera and Karamali were joint tortfeasors for purposes of the Alexander controversy.

## II.   **DECISION**

Karamali makes three claims in support of his motion.  He asserts that the medical malpractice statute of limitations, constituting a statute of repose, not only prevents patients from filing malpractice claims over two years after the offending treatment and regardless of the time when the malpractice is discovered, but that the statute prevents any third party claims derivative of any malpractice claim from being filed two years after the offending treatment, including claims of indemnity and contribution.  Second, he argues that, on the claim of indemnity, there is no vicarious or imputed liability between Avera and himself with regard to Dr. Alexander's claims because Karamali was an independent contractor and because Dr. Alexander claimed Avera was independently negligent, preventing Avera from now claiming only the "passive, vicarious, or imputed liability" necessary to assert indemnity.  Finally, on the claim of contribution, Karamali contends that he and Avera are not joint tortfeasors according to South Dakota law, and thus contribution would be improper.

### A.   **SDCL § 15-2-14.1 Does Not Bar Avera's Claims of Indemnity and Contribution**

Karamali asserts that the statute of limitations for medical malpractice in South Dakota is a statute of repose—a point that Avera does not deny.  Karamali contends that South Dakota case law holds that statutes of repose can cut off longer statutes of limitations on claims of indemnity and contribution.  Karamali cites to three other state jurisdictions as persuasive authority—Georgia, Illinois, and South Carolina—where statutes of repose were used by courts to dismiss medical malpractice indemnity or contribution claims.

#### 1.   SDCL § 15-2-14.1 Does Not Cut Off the Statute of Limitations on Claims of Indemnity or Contribution

The right to contribution is codified in South Dakota law.  SDCL 15-8-12.  Similarly, the right of indemnity is enshrined in state law.  *See* Ebert v. Fort Pierre Moose Lodge No. 1813, 312 N.W.2d 119, 122–23 (S.D. 1981); *see generally* SDCL 56-3.  Since both remedies are creatures

3

of statute, both fall into the catch-all six-year statute of limitations. SDCL 15-2-13(2). Karamali argues that if a statute of repose applies to the primary claims of Dr. Alexander underlying the claims of indemnity and contribution, that statute of repose trumps the six-year period. Adopting this construction in this case would require granting defendant's summary judgment motion.

Karamali relies upon Sheehan v. Morris Irrigation, Inc. (*Sheehan III*), 460 N.W.2d 413 (S.D. 1990), for the proposition that South Dakota courts recognize statutes of repose as categorically cutting off claims of indemnity. This case arose out of a contract to provide center-pivot irrigation systems to a South Dakota ranch. An irrigation dealer partnered with an irrigation system design firm to assemble the system and contracted with a manufacturer to build components. Soon after installation, the end guns on the pivots began to malfunction. The irrigation system design firm sued, seeking indemnification from the irrigation manufacturer. The S.D. Supreme Court affirmed the trial court's grant of summary judgment for the manufacturer based upon a "strict application view" of U.C.C. § 2-725, the statute of limitations applicable to contracts for the sale of goods—in this case, sprinkler equipment. Sheehan III, 460 N.W.2d at 416. The Court held the statute of repose barred the indemnity claim.

While Karamali's recitation of Sheehan's facts is accurate, his legal analysis is not. The Supreme Court is clear about the selective nature of its holding in Sheehan, restricting its scope to the facts of the case. *See* id. at 418 ("We therefore hold that, *in this case*, the trial court, although not so stating, correctly applied the strict application view." (emphasis added)). Further evidence of this is shown by the Court's willingness to analyze and apply the holding of a representative case adhering to the more relaxed view, specifically the Nebraska Supreme Court's ruling in Wood River v. Geer-Melkus Constr. Co., 444 N.W.2d 305 (1989). The relaxed view's first premise is that implied indemnity rests on principles of equity and should be used to prevent unjust enrichment. Sheehan III, 460 N.W.2d at 417 (citing Wood River, 444 N.W.2d at 310). Sheehan, instead of arguing against the merits of the Wood River holding as it would in adopting the strict view as the final standard, used an equity analysis to determine that no equitable case could be made for the Sheehan plaintiff. *See* Sheehan III, 460 N.W.2d at 417. The plaintiff in Sheehan sought indemnity alone, an "all or nothing" proposition that required the plaintiff to prove it was free of any wrongdoing. Id. In order for the Sheehan plaintiff to succeed

4

in its claim of indemnity, it would have had to show that there was a genuine issue of material fact that its negligence did not contribute st all to the harm alleged in the primary case. *See* id. at 415, 417. With such little space spent on the application of the relaxed view, it is understandable to contend Sheehan was a wholesale endorsement of the strict view.

The ruling in Sheehan has two important implications here. First, the Court's unwillingness to adopt the strict view shows that South Dakota will not categorically bar equitable claims such as indemnity and contribution solely because the statute of repose for the primary claim has already run. Second, applying the facts of this case to the Sheehan equitable analysis framework produces a result favoring Avera. Sheehan's equitable analysis placed emphasis upon the plaintiff's failure to earlier exercise a right under the contract to bring suit against the third-party defendant. The third party plaintiff knew of the manufacturing faults well before the statute of limitations passed. Id. at 417. In this case, Avera asserts, uncontroverted by defendant, that it did not know of Karamali's alleged negligence until it was reported by Dr. Alexander's medical expert on October 20, 2010. Nine months later, Avera filed this suit. This is a far different scenario than that in Sheehan, where the indemnity claim was filed approximately five years after discovering that the irrigation system did not function properly, Sheehan v. Morris Irrigation *(Sheehan I)*, 410 N.W.2d 569, 570 (S.D. 1987), and the parties knew of the manufacturer's (third party defendant's) warranty for much of that time, Sheehan III, 460 N.W.2d at 414.

Generally speaking, "[a] limitations period ordinarily does not begin to run until the plaintiff has a 'complete and present cause of action.' A cause of action does not become 'complete and present' until the plaintiff can file suit and obtain relief." Strassburg v. Citizens State Bank, 581 N.W.2d 510, 514 (S.D. 1998) (citing Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)). Thus, the date the statute of limitations begins to run on contribution and indemnity claims is the date money is paid, *cf.* Gen. Elec. Co. v. United States, 792 F.2d 107, 108 (8th Cir. 1986) (noting contribution specifically), since "[c]ontribution and indemnity are remedies to secure restitution." Degen v. Bayman *(Degen I)*, 200 N.W.2d 134, 136 (S.D. 1972), *overruled on other grounds by* First Premier Bank v. Kolcraft Enters., Inc., 686 N.W.2d 430 (S.D. 2004). Restitution is defined as the "[r]eturn or

5

restoration of some specific thing to its rightful owner or status," or "[c]ompensation for loss." BLACK'S LAW DICTIONARY 1428 (9th ed. 2009). In claims for indemnity or contribution, the need to restore or compensate for loss only arises when money is paid. Thus, a complete and present cause of action for indemnity or contribution generally arises only when money is paid by the party seeking indemnity or contribution.

The one exception to the Strassburg-Bay Area Laundry doctrine, according to the U.S. Supreme Court, is when "Congress has told us otherwise in the legislation at issue." Bay Area Laundry, 522 U.S. at 201. In other words, Congress, or the state legislature, must explicitly state its intent that a cause of action must be brought before it becomes a complete and present cause of action, whether because of the operation of a statute of repose or otherwise. To allow a statute of limitations to run before a complete cause of action is present would be an "odd result." Reiter v. Cooper, 507 U.S. 258, 267 (1993). That "odd result'" is best explained by the commentary to the Restatement (Third) of Torts § 22:

> An indemnitor may not escape its obligation to pay indemnity solely on the ground that the plaintiff could not have recovered from the indemnitor because of a statute of limitation. Otherwise, the indemnitee might be in an intolerable position. If the plaintiff waited until the end of the limitation period to sue the indemnitee, the indemnitee might not have time to sue the indemnitor. The indemnitee cannot recover indemnity until he is obligated to the plaintiff, and he cannot even sue until he is sued. Thus, special rules of limitation apply to indemnity.

RESTATEMENT (THIRD) OF TORTS § 22, cmt. d (2000).

Thus, in order to read into the statute of repose what defendant contends, I must decide whether the S.D. Legislature intended the statute of repose to apply to indemnity and contribution claims. A court must ascertain the true intent of the legislature "primarily from the language of the statute itself, without resort to extraneous devices." S.D. Educ. Ass'n v. Barnett, 582 N.W.2d 386, 400 (S.D. 1998). "When construing a statute, the court determines the intent of the Legislature from the words of the statute, giving them their plain meaning." Peterson, 635 N.W.2d at 564. In this matter, Sheehan is also instructive. Looking to the statutory language at issue in that case, SDCL 57A-2-725, the statute pertains to "[a]n action for breach of any contract." It is well known that the remedy for the breach of contract rests in law, which is

6

distinct from claims in equity. *See, e.g.*, Sorum v. Sorenson, 187 N.W. 423, 425 (S.D. 1922). Contribution and indemnity are both based in equity. Degen I, 200 N.W.2d at 136. Thus, it is plausible that the Court discussed equitable concerns in Sheehan because the statute of repose's plain language did not foreclose equitable or tort claims—only those claims based in contract.

As to the statute of repose cited by Karamali, the plain language of the statute does not cover indemnity or contribution. The pertinent part of SDCL 15-2-14.1 reads: "An action against a physician . . . for malpractice, error, mistake or failure to cure, *whether based upon contract or tort*, can be commenced only within two years after the alleged malpractice." (emphasis added). Again, claims of indemnity and contribution are based in equity and are distinct from claims based in contract or tort, which are based in law. Thus, it is unlikely that the legislature intended to apply the medical malpractice statute of repose to indemnity and contribution claims in the manner required by Strassburg and Bay Area Laundry.

Karamali also cites Peterson *ex rel.* Peterson v. Burns, 635 N.W.2d 556, 565 (S.D. 2001) as authority for the position that SDCL 15-2-14.1 snares other claims that, while they do not constitute medical malpractice, are nevertheless derived from allegations of malpractice. However, the Peterson Court justified its ruling that a wrongful death claim is bound by the shorter statute of repose for medical malpractice by noting that "[i]f the statute can limit personal injury liability for malpractice to two years and contract liability to malpractice to two years, it can also limit actions for wrongful death based on medical malpractice to two years." Id. The Court, in other words, noted that claims based in contract or tort law are bound by the statute of repose, as the statute's text clearly provides. Claims of indemnity and contribution, however, are based in equity and thus exist outside the scope of SDCL 15-2-14.1. The holding in Peterson does not support Karamali's argument here.

### 2. South Carolina, Illinois and Georgia Precedents Do Not Support Defendant's Statute of Limitations Claims

Karamali contends that other states have decided the precise issue of indemnity and contribution arising out of malpractice claims in favor of his position. These precedents are not binding on me. A straightforward textual analysis might explain why a minority of states cited

by Karamali—South Carolina, Illinois, and Georgia—enforce a statute of repose on medical malpractice that covers claims in equity as well as claims in law.

Karamali cites Columbia/CSA-HS Greater Columbia Healthcare Sys. v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n, 713 S.E.2d 639 (S.C. Ct. App. 2011), where the Court analyzed this statute of repose: "[i]n *any* action . . . to recover damages for injury . . . *arising out of* any medical, surgical, or dental treatment . . . by any licensed health care provider . . . must be commenced within three years from the date of treatment." Id. at 641 (emphasis added) (quoting S.C. CODE ANN. § 15-3-545(A)). The Court focused on the phrase "any action" in construing the scope of the statute of repose. Id. The Court noticed that the legislature provided instruction that *any* actions "arising out of" a medical malpractice claim fell under the statute of repose, indicating all actions of law and equity were so bound. This broad language is not used in SDCL 15-2-14.1.

The Illinois case cited by Karamali, Ashley v. Evangelical Hosps. Corp., 594 N.E.2d 1269 (Ill. App. Ct. 1992), quotes from a statute of repose:

> *No action* for damages for injury or death against any physician . . . whether based upon tort, or breach of contract, *or otherwise*, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date as occurs first.

Id. at 1271 (emphasis added) (quoting 110 ILL. COMP. STAT. ch. 83, ¶ 22.1 (1977)). The Court went on to describe this language as purposely "harsh" to convey the clear intention of the General Assembly "to cut off liability regardless of the time of its accrual." Id. Here again, the legislature uses unequivocal language to describe *all* claims "arising out of" a medical malpractice claim. Similar language is not used in SDCL 15-2-14.1.

Finally, the Georgia case cited by defendant, Krasaeath v. Parker, 441 S.E.2d 868 (Ga. Ct. App. 1994), uses similarly broadly-worded statutory language. To wit, subsection (b) read: "[I]n no event may an action for medical malpractice be brought more than five years after the date on which the negligent . . . act or omission occurred;" a passage which subsection (c) then clarifies: "[s]ubsection (b) . . . is intended to create a five-year statute of *ultimate repose and abrogation*." Id. at 869 (emphasis added) (quoting G.A. CODE ANN. § 9-3-71(b), (c) (1985)).

8

Not only did the legislature specify that this statute constituted "ultimate repose and abrogation," but the Court keyed in upon the phrase "in no event" as indicative of the legislature's intent to include within the statute all claims "arising out of" or "predicated" upon medical malpractice. *See* id. at 870. No such language is found in SDCL 15-2-14.1.

Following the tenets of Bay Area Laundry, each case cited by Karamali focused upon the unique language of the statutes of repose. Each found that the statute in question had general language indicating the intention of the legislature to create a broad scope of repose. SDCL 15-2-14.1 has no such language. The cited cases provide insufficient support for Karamali's statute of limitations claim.

### 3. While Avera's Contribution Claims May "Derive" from Medical Malpractice, Derivation Does Not Mean SDCL 15-2-14.1 Applies to Avera's Claims

Karamali also argues that South Dakota law recognizes that contribution and indemnity claims are a "derivative right" from a primary claim, citing Burmeister v. Youngstrom, 139 N.W.2d 226 (S.D. 1966):

> We think these provisions make it clear that the [Joint Tortfeasors Act] is only applicable to a situation where there is a common liability to an injured person in tort. Such liability may be joint or several, but there can be no contribution where the injured person has no right of action against the third-party defendant. The right of contribution is a derivative right and not a new cause of action.

Id. at 231. He contends that since Avera's claims derive from the primary malpractice claim (and that primary claim is clearly foreclosed by the running of the statute of repose) the Avera contribution claim must also be foreclosed.

In Burmeister, the plaintiff brought a claim of wrongful death as administrator of his wife's estate, the wife having died in a two-vehicle collision. Defendants filed a third party complaint against Burmeister personally, requesting judgment against him for all sums the court might find in his favor in a representative capacity. Id. at 230. Defendants appealed the trial court's refusal to submit this third party proceeding to the jury. Id. The Supreme Court affirmed, holding that the third party complaint was *never* viable because a provision of South Dakota law "bar[red] recovery by a guest without compensation unless the accident was caused by the willful and wanton misconduct of the owner" of the vehicle. *See* id. The dispositive issue was "whether

9

there is joint or several liability" between plaintiff and defendant third parties, and whether there was "a possible remedy against two or more persons." Id. at 231. The Court held that this claim "could not be asserted against [the plaintiff] in a direct action," and thus provided no possible remedy. Id. The "guest statute" was then (but is no longer) the law in South Dakota. SDCL 32-34-1, *repealed by* 1978 SD Sess. Laws ch. 240, § 2. Burmeister fails the defendant's case. In Burmeister, the plaintiff had statutory immunity from defendants' third party claim at all times during the proceedings for the primary claim. In Alexander, however, Karamali *had no statutory immunity* to suit from Dr. Alexander at the outset of the primary proceeding. Dr. Alexander simply chose not to sue Karamali. This is a clear example of the "odd result" of a primary plaintiff dictating the fortunes of third party claims that do not impact them. As noted above, this "odd result" is permitted only by clear legislative directive permitting the claims to be brought before they are complete and present, but such a directive is not found in SDCL 15-2-14.1. Thus, Karamali's reliance on Burmeister should be rejected.

        Karamali also cites Jones v. Weyerhaeuser, 741 P.2d 75 (Wash. Ct. App. 1987), to support his proposition that contribution claims are not permitted when the statute of repose for the primary claim has already run. In Weyerhaeuser, the plaintiff brought an action for injuries he sustained when a dock upon which he was working collapsed. Id. at 76. The suit was against the owner, the builder, and the designer of the dock. The dock owner filed a cross-claim for contribution against the other co-defendants. The third party defendants moved for summary judgment, contending that more than six years had elapsed between the completion of the dock and the collapse. Id. The court agreed with the third party defendants, citing WASH. REV. CODE 4.16.300 *et seq.*, or what the court termed the "builder-limitation statutes." Id. The court held that "[i]f the party from whom contribution is sought is not liable to the plaintiff for his injury, no joint and several liability exists, and therefore no right to seek contribution exists." The court derived authority for this holding from a case that mirrors Burmeister: Glass v. Stahl Specialty Co., 652 P.2d 948 (Wash. 1982). In that case, as noted by Weyerhaeuser, the Supreme Court ruled that an action for contribution could not be maintained against the employer because the employer was immunized from liability at the outset of the primary proceeding by virtue of the Industrial Insurance Act. Weyerhaeuser, 741 P.2d at 76. Thus, it was *never possible* for the third

10

party plaintiff in Glass to bring a contribution claim against the employer at any stage of the proceedings, which mirrors the facts and holding in Burmeister. The Weyerhaeuser court found that it was *never possible* for the third party plaintiff to bring a contribution claim against the builder and designer of the dock because the statute of repose barred the primary claim at the outset. This fact constitutes the distinction between Weyerhaeuser, et al., and the instant case. As noted above, Avera had the possibility of bringing its claims earlier. Dr. Alexander's decision not to bring or failure to bring his claims against Karamali prevented Avera from advancing cross claims.

A more viable theory for the importance, if any, of contribution being "derivative" claims comes from Henry v. Consl. Stores Int'l Corp., 624 N.E.2d 796, 800 (Ohio Ct. App. 1993), which held that "[w]hile an action for contribution may be derivative of the plaintiff's claim, it is not dependent upon the plaintiff's legal prosecution of that claim." Applying this concept to the language in Burmeister, such a theory makes more sense. This concept holds that a "possible remedy" need not now be a viable remedy, but it must have been a viable remedy at some point during the span of the primary proceeding and its derivatives, including third party claims. *See* WEBSTER'S II NEW RIVERSIDE UNIV. DICTIONARY 918 (1994) (defining "possible" as "[c]apable of existing, happening, or being true without contradicting proven facts, laws, or circumstances"). By law, the claim made against Mr. Burmeister was never viable because the "guest statute" existed at the outset of the primary proceeding—there could be no joint and several liability, initially or ever. The derivative claim in Burmeister was not dependent upon the plaintiff's prosecution as it was foreclosed from the start. By contrast, Avera could have brought this derivative claim at some point in the primary proceeding had it known sooner that Karamali's actions allegedly imputed negligence to Avera. Instead, by adopting Karamali's interpretation, Avera would be subject to the whims of the primary plaintiff, Dr. Alexander. This result creates unfairness so fundamental that the presumption against it is only overcome by clear legislative fiat. For these reasons, Karamali's argument that "derivation" binds Avera's contribution claim to the primary claim's statute of repose must be rejected.

The motion for summary judgment as to the claims for contribution should be denied.

4. Legislative Policy Does Not Support Karamali's Claim

Karamali contends that construing SDCL 15-2-14.1 to cover indemnity and contribution claims is required because, as noted in Peterson, "[t]he legislature's policy of protecting medical practitioners is clear." 635 N.W.2d at 571. To put the argument in another way, while the plain language of the statute may not require the statute of repose to cover claims of indemnity and contribution, the intent of the legislature to protect practitioners imbues the statute with such a scope. Courts may look to other considerations beyond the language of the statute to ascertain legislative intent. These considerations include "the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject" since the legislature was likely aware of these aspects when it crafted the law. *In re* Sales Tax Refund Apps. of Black Hills Power & Light Co., 298 N.W.2d 799, 802 (S.D. 1980). While Peterson's description of prior laws protecting doctors provides a glimpse of the "state of the law" at the time SDCL 15-2-14.1 was adopted, and is thus valid to consider, it is still unavailing. The Supreme Court noted that these statutes "protected doctors from lawsuits by their patients," Peterson, 635 N.W.2d at 571. This is far removed from a case where one practitioner sues another. Practitioners are the only parties to share possible joint and several liability arising out of medical malpractice claims as required for indemnity and contribution. *See* SDCL 15-2-14.1 (applying to "actions against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts for malpractice"). The legislative policy of protecting practitioners from suits by their patients does not apply to this case.

**B.      Avera's Indemnity Claim Survives Summary Judgment**

Karamali makes two arguments in support of his contention that Avera, as a matter of law, is not entitled to indemnity. He asserts that, as an independent contractor, even if negligent, he does not impute negligence to Avera. Second, he argues that because Avera is also negligent by virtue of Dr. Alexander's assertions in his Complaint, it is not entitled to indemnity, since indemnity is an "all-or-nothing" proposition in South Dakota.

Besides being an "all-or-nothing" proposition, where the indemnitee must assert that it is not actively liable for the primary claim, see Parker v. Stetson-Ross Mach. Co., 427 F. Supp.

12

249, 251 (D.S.D. 1977) (citation omitted), indemnity is only recoverable by a joint tortfeasor "where he has only an imputed or vicarious liability for damage caused by the other tortfeasor." Degen I, 200 N.W.2d at 136, *overruled on other grounds by* First Premier Bank, 686 N.W.2d at 442.

Karamali's first contention proceeds from the general rule that an employer has no liability for the acts of an independent contractor, which itself stems from the concept that "the employer has no power of control over the manner in which the work is to be done by the contractor." Clausen v. Aberdeen Grain Inspection, Inc., 594 N.W.2d 718, 722 (S.D. 1999). He cites Mahan v. Avera St. Luke's, 621 N.W.2d 150, 160–61 (S.D. 2001), which held that "the negligent act of a doctor can impute liability to a hospital under a theory of *respondeat superior* unless it can be shown that the doctor was acting as an independent contractor." Avera does not argue that the nature of Karamali's *locum tenens* position was not that of an independent contractor. Instead, Avera argues that even as an independent contractor, a relationship of ostensible agency existed between itself and Karamali at the time of the alleged malpractice. *See* SDCL 59-1-5.

Karamali notes that Avera is unable to cite any South Dakota case law equating a *locum tenens* physician with an ostensible agent. However, there is nothing in South Dakota statute or case law prohibiting an independent contractor from being considered an ostensible agent. As made explicit in Clausen, the rule that an employer has no liability for the acts of an independent contractor is only a "general" one and is, therefore, subject to exceptions. Moreover, while the negligent act of a doctor, standing alone, can only be imputed to a hospital if the party is not an independent contractor (per Mahan), in this case, the doctor's act may not have stood alone. Instead, Avera may have committed the act necessary to trigger the imputed liability—it may have held out Karamali as an agent of itself to Dr. Alexander.

"An agency relationship is defined by SDCL 59-1-1 as 'the representation of one called the principal by another called the agent in dealing with third persons.'" Kasselder v. Kapperman, 316 N.W.2d 628, 630 (S.D. 1982). "An agency relationship is either actual or ostensible. It is actual when the principal appoints the agent." Id. (citing SDCL § 59-1-4). The defining characteristic of an "ostensible agent" is "when by conduct or want of ordinary care the

13

principal causes a third person to believe another, who is not actually appointed, to be his agent."
SDCL 59-1-5. In other words, an ostensible agent has *apparent authority* derived from the
principal in the eyes of a third party. Dahl v. Sittner, 429 N.W.2d 458, 462 (S.D. 1988). The
theory of respondeat superior is defined in South Dakota as "provid[ing] that the employer is
responsible for want of care on an employee's part toward those to whom the employer owes a
duty to use care, provided that the failure of the employee to exercise such care occurred in the
course of employment." Hansen v. S.D. Dep't of Transp., 584 N.W.2d 881, 891 n.16 (S.D.
1998) (citing BLACK'S LAW DICTIONARY 1311–12 (6th ed. 1990)). Thus, while it is true that an
independent contractor is, by definition, distinct from an employee, *see* BLACK'S LAW
DICTIONARY 839 (9th ed. 2009), and thereby outside the scope of the *respondeat superior* theory
of liability per Mahan, there is no definitional distinction between independent contractors and
ostensible agents. Indeed, "[o]ne who contracts to act on behalf of another and subject to the
other's control except with respect to his physical conduct is an agent and also an independent
contractor." RESTATEMENT (SECOND) OF AGENCY § 14N (2004). Moreover, while South Dakota
case law is silent on the issue, a number of other jurisdictions find that an independent contractor
may be both an independent contractor and an agent for another based upon a theory of apparent
authority or otherwise. *See, e.g.,* West v. Atkins, 487 U.S. 42, 49, 54 (1988) (finding a private
physician under contract with the state to provide services at a state prison hospital was "clothed
with the authority of state law" and his actions were attributable to the state); Eyerman v. Mary
Kay Cosmetics, Inc., 967 F.2d 213, 219 (6th Cir. 1992); Such v. Vincent, No. 06-85J, 2007 WL
906170, at *5 (W.D. Pa. Mar. 22, 2007); Bak v. MCL Fin. Grp., Inc., 88 Cal. Rptr. 3d 800,
805–06 (Cal. Ct. App. 2009); Royal Mortg. Corp. v. Montague, 41 S.W.3d 721, 733 (Tex. App.
2001), *overruled on other grounds by* Michiana Easy Living Country, Inc. v. Holten, 168 S.W.3d
777, 789–90 (Tex. 2005); Letsos v. Century 21-New W. Realty, 675 N.E.2d 217, 224 (Ill. App.
Ct. 1996).

Taken in a light favorable to Avera, the facts indicate that Karamali served as a *locum
tenens* physician for Avera and was the doctor providing care to Dr. Alexander at the time the
alleged malpractice occurred. There is no indication that Avera represented to Dr. Alexander that
Karamali was not its agent for the purpose of caring for Dr. Alexander within its hospital. One

14

can infer that the fact Karamali's name did not come out until well into the primary proceeding, after Dr. Alexander's expert scrutinized his records, indicates that Dr. Alexander may not have been aware of any legal distinction between Avera and Karamali. Indeed, it is highly unlikely that, in an acute care situation, the distinction between an employed physician and an independently contracted physician could ever be made apparent to a patient. For this reason, Avera is able to assert that a proper theory of imputed liability—ostensible or apparent authority–may have existed based upon the facts. Accordingly, this theory survives Karamali's motion for summary judgment.

Karamali articulates a "correlative" argument that Avera is not entitled to indemnity because Dr. Alexander's complaint alleged that Avera was "actively" negligent. In other words, Karamali believes Dr. Alexander needed to assert in his complaint that Avera was liable to him on the basis of "passive, vicarious, or imputed liability" in order for Avera to now assert an indemnity claim requiring such a form of liability. Defendant cites Degen v. Bayman (*Degen II*), 241 N.W.2d 703 (S.D. 1976), among other cases, in support of this proposition. Not only does this proposition seem to only be a corollary to the "odd result" referenced above—where the primary plaintiff dictates the fortunes of a party possibly entitled to contribution or indemnity—the only case remotely applicable to this case, Degen II, does not support Karamali's argument.

Degen II arose out of a boating accident in which plaintiff brought suit against both the driver of the motorboat for negligent operation of the boat and its manufacturer for negligent design, failure to give adequate warning and breach of implied warranties. Id. at 704. Karamali says this case shows that "where there has been no other clear determination as to whether two parties are joint tortfeasors, the plaintiff's pleadings should control." Id. at 707. Since Dr. Alexander's pleadings only mentioned that Avera was negligent, Karamali argues that this language forecloses this court's ability to consider Avera's actions as anything other than active negligence, which would eviscerate Avera's current theory of imputed liability as the basis for its implied indemnity claim. The plaintiff in Degen II was seeking to prevent a co-defendant (who did not settle and was later found liable) from offsetting his liability with the payment plaintiff received from the co-defendant who did settle. SDCL 15-8-17 provides that such liability may

15

be offset if the co-defendants are joint tortfeasors. The plaintiff argued that the co-defendants were not joint tortfeasors. The Court determined that the plaintiff's amended pleading, which alleged that the co-defendants were joint tortfeasors, was controlling on the Court's decision. In making this determination, the Court adopted the quotation Karamali cites, but clearly applied it only to the unique facts in Degen II. *See* id. at 707 ("Where the plaintiff charges several defendants with tort, and one of the defendants buys its way out of the suit . . . the court will not go into the question of liability of such defendant. The test in such case is: Was the defendant sued as a tort-feasor?"). Indeed, the Degen Court attributes this quotation to a North Dakota case with a similar set of facts that are far removed from the facts at issue in this case. *See* id.; Levi v. Montgomery, 120 N.W.2d 383, 388–89 (N.D. 1976). As a result, Degen II does not support Karamali's argument.

Avera's claims of indemnity and contribution survive Karamali's summary judgment motion. Based upon an analysis of its text, the statute of repose for medical malpractice in South Dakota does not apply to cut short the statute of limitations on indemnity and contribution claims. Ostensible agency is at least a viable theory with the facts taken in a light favorable to Avera. Even though indemnity is an "all-or-nothing" proposition, "passive, vicarious, and imputed" indemnity through an ostensible agency theory permits Avera to maintain an indemnity claim after the settlement in Alexander. There are genuine issues of fact as to who did what.

## III.    **ORDER**

IT IS ORDERED that defendant's motion, Doc. # 9, to dismiss plaintiff's complaint is denied.

Dated this 24th day of January, 2012.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY
(SEAL)                     DEPUTY

16